IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA L. RENEAU | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 15-613-N |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Social Security Commissioner | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) Plaintiff, Patricia Reneau ("Reneau" or "Plaintiff") seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (SSI) (Docs. 1, 13). With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 19, 21). Oral argument was waived in this action (Doc. 20). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

PROCEDURAL BACKGROUND

Plaintiff protectively applied for disability insurance benefits and SSI on November 17, 2012, and December 19, 2012, respectively, asserting a disability onset date of September 18, 2012. (Tr. 151-164). At the time of the administrative

1

hearing, Plaintiff was forty-nine years old, had completed the tenth grade and had previous work experience as a cashier checker. (Doc. 13; Fact Sheet). Plaintiff alleges disability due to bipolar disorder, chronic lower back pain, and post-traumatic stress disorder. (*Id*). An Administrative Law Judge ("ALJ") denied benefits after determining that Reneau did not meet disability listing requirements; the ALJ further found that Plaintiff was capable of performing the full range of light unskilled work. (Tr. 22-28). Plaintiff requested review of the hearing decision but the request was denied by the Appeals Council. (Tr. 1-6).

Plaintiff claims that the ALJ (1) committed reversible error in violation of Social Security Regulations 20 CFR 416.927(d) and Social Security Ruling 96-2 by failing to assign controlling weight to the opinions of Plaintiff's treating physician, Dr. Wilsania Rodriguez, M.D., and instead adopting his own medical opinion in violation of Social Security Ruling 96-6p and *Marbury v. Sullivan*, and (2) committed reversible error in violation of Social Security Regulation 20 C.F.R. 404.1529(b) in failing to fulfill his duty to develop the record by ordering a consultative psychological examination. (Doc. 13 at 1-2). Defendant has responded to—and denies—these claims (Doc. 16).

STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." '

" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## DISCUSSION

Reneau takes issue with the fact that the ALJ did not give controlling weight to the opinion of Dr. Rodriguez, Reneau's treating physician, that Reneau's psychological problems were disabling. (*Id*. at 5-6). Plaintiff additionally claims

4

that the ALJ failed to fully develop the record. This Court will first address whether the ALJ erred in not assigning Dr. Rodriguez's opinion controlling weight.

At step four of the sequential evaluation process the ALJ found that Reneau had the "residual functional capacity to perform the full range of light unskilled work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." (Tr. 24). More specifically, the ALJ concluded that:

> The limitation to light work accommodates the claimant's chronic lower back pain, and any allegation of a ruptured disc. In addition, any complaint of fatigue is accommodated by the limitation to light work. The limitation to unskilled work accommodates the claimant's bipolar disorder and PTSD, wherein she is unable to perform any work beyond unskilled work. Thus limitation to unskilled work is supported by the generally within normal limits findings at treatment examinations, her activities of daily living, her general overall improvement in symptomology and her improved GAF score over time.

(Tr. 26). As a result, the ALJ concluded that Plaintiff could perform her past relevant work as a cashier and that she was not disabled. (Tr. 28-29). The ALJ summarized Plaintiff's medical records as follows:

> Her medical records show that in 2013 she complained of back pain and was assessed with chronic lower back pain (see Exhibit 15F). She was prescribed medication and given a Toradol injection. In addition, the claimant complained of hip pain with a burning sensation near her right thigh. In terms of the claimant's alleged bipolar disorder and PTSD, the claimant's symptoms have improved overtime with medication, treatment, and counseling, and upon examination, generally the claimant's mental health findings were within normal limits despite her reported suicidal ideation in September 2012 that were agitated by family stressors, and one additional time in January 2014.
>
> The claimant's treatment records from Mobile Infirmary in September 2012 show that the claimant generally had all mental findings within normal limits despite being agitated and in a dysphoric mood, particularly in light of circumstances wherein the claimant's son lost custody of his children during that time (Exhibit 3F). Her treatment notes from Altapointe in 2012 show

5

that the claimant was not doing well in September 2012, but her mood improved thereafter (Exhibits 5F; 6F). While she had some suicidal ideation in September 2012, upon examination, she was behaving normally, cooperative, had an appropriate affect, and fair judgment, despite some impairment in memory and concentration. She was assessed with a global assessment of functioning (GAF) score of 50, which indicates serious symptoms. Nevertheless, in November 2012, her mood was better, and she appeared organized, calm, and was cooperative. Her affect was appropriate to the situation, she had no suicidal ideation, her thoughts were logical, there was no impairment in her memory and concentration, and her insight and judgment was fair despite having mild anxiety.

When the claimant presented to the emergency room in October 2012 for a physical non-severe issue, she was assessed as having a normal mood, affect, and judgment (Exhibit 4F).

Treatment notes from Altapointe in 2013 show that despite reported irritability and some depression symptoms by the claimant, upon examination she was cooperative, her memory was unimpaired, and her behavior was normal (Exhibits 11F; 14F). Moreover, as of October 2013, she reported that she did not feel anxious anymore and her treatment notes set forth that the claimant was doing better on her medication (Exhibit 14F). Additional Altapointe records from 2014 show that the claimant continued to be assessed with bipolar and anxiety, as well as a GAF score of 53, which indicates moderate symptoms (Exhibit16F; 17F). Despite the claimant's allegations of mood problems, hearing voices to tell her hurry up, suicidal ideation, crying spells as set out in her treatment notes from January 2014,the examiner set forth that the claimant had not [had] any hospitalizations in the past year (Exhibit 17F). Moreover, upon examination, she was behaving normally, was cooperative, had no impairment in memory or concentration, had logical thoughts, and had good insight and judgment. In addition, her ability to care for herself was noted to be "good" and she had interest in future recreation. In addition, the claimant reported that her "friends tell [her] [sh]e do[es] too much for other people" (Exhibit 17F). She reported that her present support system included her husband and a friend that lives close to her. In addition, it was noted that her husband was disabled and that she was applying for disability at that time.

(TR. 25). After summarizing the medical evidence, the ALJ stated that he gave only some weight to Dr. Wilsania Rodriguez's conclusion that Plaintiff's psychological problems were disabling.  (*Id.* at 26).   Plaintiff, however, contends that Dr.

6

Rodriguez's opinion of November 18, 2013, wherein she opined "Im currently treating her for HTN and DLP ... not any disabling condition ... I do feel her psych problems are desabling [sic] though" should have been given controlling weight because it was consistent with Plaintiff's medical evidence of record. (TR. 527; Doc. 13 at 3).

"In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981);*[1] *see also 20 C.F.R. § 404.1527.* Regardless, the ALJ must state with particularity the weight given to

---

[1]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).

In the ALJ's opinion, the weight given to Dr. Rodriguez's opinion was diminished because Dr. Rodriguez is not a mental health specialist and her opinions were not consistent with Reneau's medical history. (TR. 26). More specifically, with regard to Dr. Rodriguez's opinion that Reneau's psychological problems are disabling, the ALJ stated that her opinion:

> [I]s an opinion not given by a mental health specialist, and is not consistent with the claimant's improved symptoms with on-going and consistent mental health treatment, counseling, and medication; the treatment examination findings wherein the claimant generally was cooperative, behaved normally, had fair judgment, and unimpaired memory and concentration; her improved GAF score over time; and in light of her activities of daily living wherein she is able to live with her husband, perform household chores, help take care of the family pet, and go out in public to the grocery store and to doctor's appointments.

(*Id*.). Despite, Plaintiff's assertions to the contrary, this Court finds that there was substantial evidence that contradicted Dr. Rodriguez's opinion such that the ALJ did not err by giving her opinion as to Plaintiff's mental disability only some weight. Further, the ALJ's explanation specifically articulates the reasoning behind his decision to diminish the weight attributed to Dr. Rodriguez's opinion, i.e. a lack of specialty in the field in which she opined and inconsistencies between her opinion and Plaintiff's medical record. As such, Plaintiff's assertion that Dr. Rodrigeuz's opinion should have been given controlling weight is without merit.

Plaintiff has additionally asserted that the ALJ committed reversible error by failing to fully develop the record by ordering a consultative psychological examination. (Doc. 13 at 5).

It is well-established that the ALJ has a basic duty to develop a full and fair record. 20 C.F.R. § 416.912(d). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *See* 20 C.F.R. § 416.912(a) (stating that "[claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) (stating "[y]our responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled"). "In fulfilling the duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such is necessary to enable the ALJ to render a decision." *River v. Astrue*, 901 F.Supp.2d 1317, 1327 (S.D.Ala. 2012); *See Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir.2007). ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.").

In support of her argument that a consultative psychological exam should have been ordered, Plaintiff does not state that there was a lack of medical evidence. Rather, Plaintiff argues that "in failing to order a consultative

psychological examination and in failing to take into account the Plaintiff's treatment records and opinion of Plaintiff's treating physician, the Administrative Law Judge's adopted residual functional capacity does not truly encompass Plaintiff's severe mental impairments." (Doc. 13 at 6). Such an assertion gives no merit to Plaintiff's position that there was insufficient medical evidence for the ALJ to consider in making an informed decision. Further, as indicated by the ALJ's opinion, he had access to and did, in fact, review all of the medical records referencing Plaintiff's mental conditions and treatment before making his determination. There is no indication that the ALJ did not have sufficient evidence on which to make a determination such that a consultative exam was necessary. As a result, the ALJ's failure to order a consultative exam was not reversible error.

## CONCLUSION

Plaintiff has raised two claims in bringing this action; both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMMISSED**. Judgment will be entered by separate Order.

DONE this 4th day of November, 2016.

/s/ *Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**